U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2026 MAY -8 A 10: 35

CLERK OF COURT

JAMES A. BARKER III,
Plaintiff,

v.

LANDMARK CREDIT UNION,
a Wisconsin credit union, and
JEFF FRANK, individually and in his
capacity as Security Officer of Landmark
Credit Union, or, in the alternative,
THE ESTATE OF JEFF FRANK,
by and through its Personal Representative,

Defendants.

**26-C-0815**

Case No.: _____

COMPLAINT FOR VIOLATION OF THE
RIGHT TO FINANCIAL PRIVACY ACT,
CONSPIRACY AGAINST CIVIL RIGHTS,
AND NEGLIGENCE

DEMAND FOR JURY TRIAL

---

**COMES NOW** Plaintiff James A. Barker III, appearing pro se, and for his Complaint

against Defendants Landmark Credit Union, Jeff Frank (or, in the alternative, the Estate

of Jeff Frank), states and alleges as follows:

---

## PRELIMINARY STATEMENT

This is a civil action arising from Landmark Credit Union's unlawful disclosure of Plaintiff's confidential financial records in response to a subpoena that was void on its face — citing a nonexistent Wisconsin statute, for a crime with which Plaintiff was never charged, bearing a blank notary commission expiration, and displaying a facial authentication defect. The records obtained through that void process were withheld from Plaintiff throughout criminal proceedings in Case No. 2015CF000627 in the Racine County Circuit Court, never produced in discovery despite a court order, and then introduced against Plaintiff at trial in November 2018 as Trial Exhibit 46. Plaintiff seeks compensatory and punitive damages, declaratory relief, and injunctive relief.

---

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 12 U.S.C. § 3416 (Right to Financial Privacy Act).

2. This Court has supplemental jurisdiction over Plaintiff's state law negligence claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in Racine County, Wisconsin, which lies within the Eastern District of Wisconsin, and because Defendant Landmark Credit Union maintains its principal offices at 5445 S. Westridge Drive,

New Berlin, Wisconsin 53151, also within this District.

---

## PARTIES

4. **Plaintiff James A. Barker III** is a natural person and citizen of the State of Wisconsin, currently residing at 1403 West 6th Street, Apt. 214B, Racine, Wisconsin 53404. At all times relevant to this Complaint, Plaintiff was a member and account holder of Landmark Credit Union, holding member number 4664820 and associated accounts.

5. **Defendant Landmark Credit Union** ("LCU") is a Wisconsin-chartered credit union with its principal offices located at 5445 S. Westridge Drive, New Berlin, Wisconsin 53151. LCU is a financial institution subject to the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. LCU maintained Plaintiff's confidential financial records and produced those records in response to defective legal process.

6. **Defendant Jeff Frank** is an individual who at all relevant times was employed as Security Officer of Landmark Credit Union at 5445 S. Westridge Drive, New Berlin, Wisconsin 53151. He is sued in both his individual capacity and his official capacity as Security Officer. Frank was the primary point of contact between LCU and law enforcement investigators, coordinated the "No Activity" hold on Plaintiff's accounts, and received the void subpoena on LCU's behalf.

6a. Plaintiff is currently unable to confirm whether Defendant Jeff Frank is living or deceased, or whether he remains employed by Landmark Credit Union. Plaintiff pleads the following alternative allegations pursuant to Federal Rule of Civil Procedure 8(d)(2), which expressly permits a party to set forth two or more statements of a claim or defense alternatively or hypothetically:

**(i) If Jeff Frank is living:** Defendant Frank is sued in his individual capacity and in his former capacity as Security Officer of Landmark Credit Union. Individual liability attaches to Frank for his personal participation in the pre-process coordination of the "No Activity" hold on Plaintiff's accounts and for his role in accepting and acting upon the void subpoena. Plaintiff will serve Frank personally at his last known address or wherever he may be located through reasonable investigation, or through the Court's service assistance mechanisms available to pro se litigants.

**(ii) If Jeff Frank is deceased:** Plaintiff substitutes the Estate of Jeff Frank, by and through its duly appointed personal representative, as defendant in place of Jeff Frank individually. Claims against a deceased defendant survive under Wisconsin Statutes Section 895.01 and applicable federal survival statutes. Plaintiff will seek to identify the personal representative of Frank's estate through probate records and will amend this Complaint or the caption accordingly upon confirmation. Landmark Credit Union, as Frank's former employer, may have knowledge of Frank's status and is requested to disclose same in initial disclosures under Federal Rule of Civil Procedure 26.

**(iii) If Jeff Frank is no longer employed by Landmark Credit Union:** His separation from LCU does not affect his individual liability. The § 1985(2) conspiracy claim and the individual capacity claims arise from conduct he undertook during his employment. His current employer or employment status is irrelevant to the claims asserted.

6b. Regardless of Frank's current status, Defendant Landmark Credit Union bears independent and direct institutional liability for Frank's actions, which were taken within the scope of his employment as LCU's Security Officer and in furtherance of LCU's institutional response to law enforcement requests. LCU is vicariously liable for Frank's conduct under the doctrine of respondeat superior, and independently liable for its own failure to implement adequate legal process verification procedures. Plaintiff's claims against LCU are not contingent on Frank's individual liability or his current status.

---

## STATEMENT OF FACTS

### A. Plaintiff's Accounts at Landmark Credit Union

7. Plaintiff opened a personal savings account (Account No. 4664820-1, VIP Savings) and a personal checking account (Account No. 4664820-2, Rewards Checking) at Landmark Credit Union on November 27, 2013.

8. Plaintiff subsequently opened a business savings account (Account No. 900152070-8, Business Savings) and a business checking account (Account No. 900152070-7, Community Checking) associated with his business, Foreal Deals LLC, on March 31, 2015.

9. These accounts contained Plaintiff's personal and business financial records which were subject to the full protections of the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq.

**B. The April 23, 2015 Search and Plaintiff's Arrest**

10. On April 23, 2015, law enforcement officers executed a search warrant at Plaintiff's residence located at 1412 West 6th Street, Racine, Wisconsin, in connection with an investigation into alleged theft of LED lighting products from Cree Lighting.

11. Plaintiff was taken into custody on April 23, 2015 and charged under Case No. 2015CF000627 in the Racine County Circuit Court. Plaintiff was never charged with unlawful use of a telephone or any violation of Wisconsin Statutes Section 947.01 or any subsection thereof.

**C. The No-Activity Hold: Coordination Before Valid Legal Process**

12. During the search of Plaintiff's girlfriend Crystal Bernal's residence on April 23, 2015, Racine County Sheriff's Investigator Brian D. VanScyoc, along with Investigators Knaus and Dobesh, located a Landmark Credit Union identifier belonging

to Plaintiff.

13. On or about April 23, 2015, Investigator VanScyoc contacted Defendant Jeff Frank, Security Officer of Landmark Credit Union, regarding Plaintiff's accounts.

14. According to VanScyoc's own supplementary report dated April 24, 2015 (Ritter pages 102-107, the "VanScyoc Report"), Defendant Frank was advised that Plaintiff held at least one account with Landmark Credit Union and that Frank "would place a 'No Activity' hold on Barker III's account."

15. This "No Activity" hold was coordinated between Defendant Frank and law enforcement investigators on or about April 23, 2015 — before any subpoena had been issued, before any Order of Court had been obtained, and before any valid legal process had been served upon LCU.

16. The placement of a "No Activity" hold on Plaintiff's accounts in coordination with state investigators, before valid legal process issued, constituted adverse action against Plaintiff's property taken in furtherance of the investigators' goals and in concert with state actors.

**D. The Void Subpoena**

17. On April 29, 2015 — six days after the April 23, 2015 warrant execution — Investigator VanScyoc prepared a Subpoena for Documents directed to Landmark Credit Union ("the Subpoena").

18. The face of the Subpoena states that it was issued for the following purpose: "documents which may lead to the identity of the person responsible for the **unlawful use of a telephone, in violation of Wisconsin Statutes Section 947.01(c)**."

19. Wisconsin Statutes Section 947.01 is the disorderly conduct statute. It has no subsection (c). Wisconsin Statutes Section 947.01(c) **does not exist**.

20. Plaintiff was **never charged** with unlawful use of a telephone. This offense appears nowhere in the criminal charges filed against Plaintiff in Case No. 2015CF000627.

21. The Subpoena thus cited a nonexistent statute as its legal authority, was issued for an offense with which Plaintiff was never charged, and on its face constituted void process.

22. The Affidavit in Support of the Subpoena, sworn by Investigator VanScyoc, bears a blank notary commission expiration date — the line reading "My Commission Expires on:" is left blank. This defect rendered the affidavit unsworn and defective under Wisconsin Statutes Section 137.01(4), which requires all certificates of acknowledgments and sworn instruments before a notary public to be attested by a clear impression of the official seal or imprint of the rubber stamp of the officer, and requires the notary's commission expiration date. Wisconsin Statutes § 889.08 further requires that any certified copy of a legal record be certified by the legal custodian to have been compared with the original and to be a true copy thereof — a standard the Affidavit cannot satisfy given its defective notarization. Wisconsin Statutes § 889.07

provides that original records produced by the legal custodian shall be receivable in evidence whenever relevant, and that a certified copy shall be received with like effect as the original — but a document that cannot be authenticated under § 889.08 cannot be received under § 889.07, and a subpoena supported by such a document has no valid evidentiary foundation. The Wisconsin Supreme Court has held that the oath or swearing requirement attached to affidavits supporting legal process is not a mere formality and cannot be dismissed as a technical irregularity. *State v. Wilton Tye*, 201 Wis. 2d 124 ("The requirement that a search warrant be supported by oath or affirmation is an explicit and long-standing feature of both state and federal constitutions, as well as legislation, and is essential to the warrant's validity. Such a defect cannot be dismissed as a mere technicality, nor cured by a sworn statement after the warrant's execution."). The Wisconsin Court of Appeals has similarly held, in its published opinion in *City of Racine LLC v. Park 6*, No. 2011AP2282, that an oath or swearing requirement is not a meaningless legal trapping — the solemnity imposed by an oath requires the actor to stop and consider the allegations being made, and what happens after a defective start cannot cure a faulty beginning. Taken together, §§ 137.01(4), 889.07, and 889.08, and the authorities in *State v. Tye* and *City of Racine LLC v. Park 6*, establish a complete wall of Wisconsin legal authority: the blank notary commission expiration on the Affidavit in Support of the Subpoena rendered it unsworn, incapable of certification, and incapable of evidentiary reception — and the unsworn, unauthenticated affidavit cannot support the Subpoena it purports to authorize.

23. The face of the Subpoena names "W. Richard Chiapete" as the requesting Assistant District Attorney. However, the signed version of the Subpoena and accompanying documents bear the handwritten signature of Patricia Hanson — not Chiapete. The same Chiapete-typed, Hanson-signed pattern appears throughout the challenged search warrant records in this case and is consistent with a pattern of document fabrication.

24. The WHEREFORE paragraph of the supporting Affidavit requests the subpoena for evidence of **Felony Theft** — directly contradicting the face of the Subpoena, which states the investigation is for "unlawful use of a telephone." This internal contradiction further demonstrates that the documents were generated from a modifiable template rather than authentic original court process.

25. VanScyoc's Report states that on April 29, 2015, he "scanned and emailed" a copy of the face of the subpoena and Order of Court to Defendant Frank at approximately 0920 hours.

**E. The Defective Orders of Court**

26. In connection with the Subpoena, two versions of an Order of Court under Wisconsin Statutes Section 968.135 were produced.

27. **Version 1** ("Order Version 1") bears the purported signature of Racine County Circuit Court Judge Flancher, is dated April 29, 2015, but contains no Clerk of Court date stamp, no court seal, no certification, and has the "Items Received," "Court Order Returned," date, time, and recipient fields left entirely blank. Version 1 was provided to

Plaintiff by his then-attorney Mark F. Nielsen on December 22, 2015, while Plaintiff was incarcerated. Under Wisconsin Statutes § 889.08, a certified copy of a court record must be certified by the legal custodian to have been compared with the original and to be a true copy. Order Version 1 contains no such certification and cannot be authenticated as required by law.

28. **Version 2** ("Order Version 2") was mailed to Plaintiff by Attorney Nielsen on January 4, 2016, pursuant to a correspondence letter from Nielsen's firm, Schwartz, Tofte & Nielsen, Ltd. Order Version 2 has the previously blank "Items Received" and "Court Order Returned" fields filled in by handwriting identified as that of Investigator VanScyoc — not by the Court, not by the Clerk, and not by any judicial officer. The notation on Order Version 2 states: "4-29-15 By FF / 5-7 Rec'd by VS / 5-7 Retnd by VS." Order Version 2 likewise contains no Clerk of Court certification, no court seal, and no authentication by the legal custodian as required by Wisconsin Statutes §§ 889.07 and 889.08, and its post-hoc completion by an investigator rather than the Court renders it incapable of serving as valid legal process.

29. Neither Order Version 1 nor Order Version 2 appeared in the electronic case records of Case No. 2015CF000627. Neither the Racine County Clerk of Courts Office, the District Attorney's Office, nor Defendant Jeff Frank was able to verify the authenticity of either version when requested.

30. On June 30, 2017, Racine County Clerk of Courts Administrative Deputy Brian Graziano confirmed in writing that the Order of Court records are "not a Racine County

Clerk of Courts record therefore we cannot certify any documents" — the legal custodian of the alleged original records denied in writing any jurisdiction over the records. This written denial is fatal to any claim that the Orders constitute valid legal process: Wisconsin Statutes § 889.07 provides that original records in any court proceeding, being produced by the legal custodian, shall be receivable in evidence whenever relevant, and that a certified copy thereof shall be received with like effect as the original. Where the legal custodian cannot produce the original and cannot certify a copy, neither the original nor any copy meets the evidentiary standard established by § 889.07, and neither can constitute lawful process compelling disclosure of Plaintiff's financial records.

31. The Order Version 2 was modified by Investigator VanScyoc, a law enforcement officer and party to the investigation, who filled in blank fields on an Order of Court that purports to bear a judicial signature. This modification by an investigator of an incompletely executed judicial order, on a document whose fields were left blank by the issuing authority, rendered Order Version 2 further defective and constitutes further authentication failure.

32. A discovery disc produced by the District Attorney's Office to Plaintiff's then-attorney David Saldana on June 22, 2015 — labeled "Barker Disc 1: eBay Facebook PayPal Landmark" — contained modifiable template versions of the LCU subpoena, affidavit, and Order of Court documents. The same disc system also contained, on "Barker Disc 2: Search Warrants and Photos," twenty-two unsigned

warrants, twenty-two unsworn affidavits, and twenty-two blank warrant returns — all in modifiable .doc format — with metadata reflecting creation and revision dates of June 19, 2015. The presence of modifiable LCU process templates on the same disc corroborates that the LCU subpoena and Order were generated from a template rather than authentic original court process.

**F. LCU's Compliance with the Void Subpoena**

33. Notwithstanding the facially void nature of the Subpoena — which cited a nonexistent statute, referenced an uncharged offense, bore a blank notary commission expiration date, and displayed a facial signature inconsistency — Defendant LCU, through Defendant Frank, complied with the Subpoena and produced Plaintiff's confidential financial records to law enforcement.

34. On May 7, 2015, according to VanScyoc's Report, Investigator VanScyoc "received the results of the Landmark Credit Union subpoena." Defendant Frank advised VanScyoc that Plaintiff held four accounts with LCU with a total balance of $5,248.19, specifically: Savings Account No. 4664820 ($5.23) with associated Checking Account ($5,237.56), and Savings Account No. 900152070 ($0.40) with associated Checking Account ($5.00).

35. The bank records produced by LCU pursuant to the void Subpoena constituted Plaintiff's full account history spanning from the opening of his accounts in November 2013 through March 2015 — 144 pages of detailed transaction records later filed as

Document 312 in Case No. 2015CF000627.

36. LCU had a duty under the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq., and under Wisconsin law, to verify that any legal process compelling disclosure of customer financial records was legally valid before producing those records. The Subpoena's citation of a nonexistent statutory subsection (§ 947.01(c)) was apparent on the face of the document and should have triggered LCU's compliance review and been rejected as void process.

**G. Brady Violation: Records Withheld from Discovery and Used at Trial**

37. Despite LCU's production of Plaintiff's bank records to the prosecution on or about May 7, 2015, those records were **never produced to Plaintiff or his defense counsel** at any stage of the criminal proceedings.

38. Plaintiff's own contemporaneous annotation on VanScyoc's Report states, in Plaintiff's handwriting: **"No copies of Landmark Bank records has been submitted to the discovery."**

39. Plaintiff's then-attorney, Toni Young, confirmed in an audio-recorded conversation (Trial Exhibit N) that District Attorney Patricia Hanson told her the State did not have a freeze on Plaintiff's accounts. Young further confirmed: **"There's no order in your file in here"** — establishing that even defense counsel had no knowledge of the LCU records or the Order of Court directing their production.

40. On January 29, 2018, at a hearing before the Honorable Faye M. Flancher in Case No. 2015CF000627, Plaintiff specifically requested the Landmark Credit Union bank records as outstanding discovery. The Court's written Order from that hearing, dated January 30, 2018, lists **"Landmark Credit Union Bank Records"** as item number five among the discovery items the State was ordered to produce within thirty days.

41. Notwithstanding this court order, the Landmark Credit Union bank records were not produced to Plaintiff in discovery within thirty days, or at any time prior to trial.

42. In November 2018, the Landmark Credit Union bank records were introduced at Plaintiff's trial as **Trial Exhibit 46**.

43. The records were introduced without prior disclosure to Plaintiff, depriving him of any opportunity to challenge their authenticity, challenge the validity of the process by which they were obtained, or prepare an adequate defense to their use.

44. The bank records were used to establish a financial connection supporting a conspiracy charge against Plaintiff.

45. Plaintiff was convicted. The use of bank records obtained through void process, withheld from discovery in violation of Brady v. Maryland, 373 U.S. 83 (1963), and introduced at trial without notice, contributed to that conviction.

**H. Fraudulent Concealment — Tolling of All Statutes of Limitations**

46. All applicable statutes of limitations governing Plaintiff's claims are tolled by Defendants' fraudulent concealment of the facts giving rise to those claims. Under the doctrine of fraudulent concealment, a limitations period does not begin to run — and any period that has begun to run is tolled — when a defendant takes affirmative steps to conceal a plaintiff's cause of action, the plaintiff could not have discovered the cause of action despite the exercise of due diligence, and the plaintiff filed suit within a reasonable time after discovering the fraud. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990); *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 651 (7th Cir. 2007). All three elements are satisfied here.

**Element One: Defendants Took Affirmative Steps to Conceal Plaintiff's Cause of Action**

47. The concealment here was not passive — it was active, multi-layered, and sustained across years of criminal proceedings. Defendants, individually and in concert with state actors, took the following affirmative steps to prevent Plaintiff from discovering that his financial records had been obtained through void process and used against him:

a. **The void subpoena itself was an instrument of concealment.** The Subpoena cited a nonexistent statutory provision — Wisconsin Statutes Section 947.01(c) — as its legal authority, and listed "unlawful use of a telephone" as the offense under investigation, a charge never brought against Plaintiff. This misrepresentation on the face of the Subpoena ensured that even if Plaintiff somehow obtained the document, the cited authority would not connect to any charge in his case, making it difficult to

Case 2:26-cv-00815-PP    Filed 05/08/26    Page 16 of 47    Document 1

understand the document's relevance or challenge its validity.

b. **LCU produced Plaintiff's records to the prosecution while concealing from Plaintiff that any such production had occurred.** Plaintiff was never notified — as required under the Right to Financial Privacy Act — that his financial records had been subpoenaed. LCU's production to the prosecution, without corresponding disclosure to Plaintiff, ensured Plaintiff had no contemporaneous knowledge that his records had been obtained at all.

c. **The Orders of Court were kept out of the official case record.** Neither Order Version 1 nor Order Version 2 appeared in the electronic case records of Case No. 2015CF000627. The Racine County Clerk of Courts — the legal custodian of the records — denied in writing on June 30, 2017 that these documents were Clerk of Courts records, stating it "cannot certify any documents" related to the Orders. A document whose existence the legal custodian denies is effectively concealed from a defendant attempting to investigate through proper channels.

d. **The prosecution made affirmative misrepresentations to defense counsel about the existence of the LCU records.** Plaintiff's then-attorney Toni Young confirmed on an audio recording (Trial Exhibit N) that District Attorney Patricia Hanson told her the State did not have a freeze on Plaintiff's accounts — an affirmative misrepresentation that directly contradicted the existence of the "No Activity" hold coordinated by Defendant Frank and Investigator VanScyoc. Young further confirmed: "There's no order in your file in here." These were not mere omissions; they were false statements

made to defense counsel that affirmatively concealed LCU's role.

e. **The bank records were withheld from discovery despite a court order compelling their production.** On January 30, 2018, the Honorable Faye M. Flancher entered a written Order directing the State to produce the Landmark Credit Union bank records within thirty days. The records were not produced. Their deliberate continued withholding — even after a direct court order — constitutes ongoing affirmative concealment. The records only surfaced at trial in November 2018 as Trial Exhibit 46, more than three and a half years after their initial production to prosecutors, and then without prior notice to Plaintiff.

f. **The discovery disc corroborates fabrication of the process documents themselves.** The modifiable LCU subpoena and Order of Court templates found on Barker Disc 1 — picked up by Attorney Saldana from DA Hanson on June 22, 2015, two months after the Subpoena was allegedly executed and returned — demonstrate that the process documents were generated from a template rather than authentic original court process. The fabricated nature of the underlying process documents is itself evidence of an intent to create a false record of lawful authority that would withstand scrutiny while concealing the true — unlawful — basis for the disclosure.

g. **The DRAFT version of VanScyoc's supplementary report omitted the critical final page.** Two versions of VanScyoc's supplementary report exist: a six-page version (Ritter pages 102-107) and a five-page DRAFT version. The DRAFT omits page six — the very page containing the LCU account details, the confirmation that Frank provided

Case 2:26-cv-00815-PP    Filed 05/08/26    Page 18 of 47    Document 1

the four-account balance of $5,248.19, and Plaintiff's handwritten annotation that "No copies of Landmark Bank records has been submitted to the discovery." The systematic truncation of the report at precisely the page documenting the LCU transaction corroborates deliberate concealment of LCU's role in discovery production.

### Element Two: Plaintiff Could Not Have Discovered the Cause of Action Despite Due Diligence

48. Plaintiff exercised all diligence available to him under the circumstances and still could not have discovered Defendants' role:

a. Plaintiff was incarcerated from April 23, 2015 through February 4, 2016, when he was released on a $15,000 cash bond after the Department of Corrections dismissed his revocation. Plaintiff remained out on bond throughout the criminal proceedings. He was sentenced on March 4, 2019, and remained incarcerated following sentencing through approximately November 2021. While incarcerated during both periods, his access to outside investigations, financial institution records, and independent legal research was severely curtailed.

b. From approximately 2020 through 2021, Plaintiff was legally blind due to bilateral uveitis, rendering him unable to read documents or conduct any meaningful written investigation. During the same period, the COVID-19 pandemic eliminated or severely restricted prison law library access.

c. Plaintiff retained seven successive attorneys, each of whom was positioned to discover the LCU records issue through proper discovery channels. Each attorney either failed to investigate the issue, was obstructed in doing so, or abandoned Plaintiff before the issue was resolved. The serial failure of seven attorneys to surface the LCU records — despite Plaintiff's repeated requests for complete discovery — is itself evidence that the concealment was effective even against trained legal professionals.

d. Plaintiff went directly to LCU himself after learning from Attorney Young that no LCU order appeared in his case file. Only through this independent, out-of-channel investigation — circumventing both the prosecution and the Clerk of Courts — did Plaintiff begin to piece together what had occurred. Due diligence cannot reasonably require a pro se incarcerated defendant to independently bypass all official channels to uncover what prosecutors, defense counsel, and the court's own discovery processes failed to reveal.

e. Even after Plaintiff identified the LCU records issue and raised it on the record at the January 29, 2018 hearing — obtaining a court order for production — the records were still withheld until trial. Plaintiff's diligent pursuit of the records through the court system was affirmatively frustrated by continued concealment.

**Element Three: Plaintiff Filed Within a Reasonable Time After Discovery**

49. Plaintiff's discovery of the full scope of Defendants' conduct was a progressive and ongoing process, not a single moment of revelation. Key discovery events include:

Case 2:26-cv-00815-PP    Filed 05/08/26    Page 20 of 47    Document 1

a. Plaintiff first confirmed from Attorney Young that no LCU order existed in his case file while criminal proceedings were pending — this was an early signal that something was wrong, but did not reveal the full picture of void process, pre-process coordination, and deliberate withholding.

b. Plaintiff raised the LCU records issue on the record at the January 29, 2018 hearing and obtained a court order for production — but the records were still withheld.

c. The records surfaced at trial in November 2018 as Trial Exhibit 46 — giving Plaintiff his first clear confirmation that the records had been obtained, withheld, and used against him, and that LCU had complied with a subpoena he had never seen in discovery.

d. Following his release in approximately November 2021 — after serving his sentence — Plaintiff remained subject to supervision obligations, was visually impaired, and lacked financial resources to immediately pursue civil litigation.

e. Plaintiff previously filed Case No. 18-C-0253 in this District, demonstrating his intent to pursue civil relief and his awareness of the broader pattern of misconduct, before the full scope of the LCU-specific claims was crystallized.

f. This Complaint is filed within a reasonable time after Plaintiff's discovery of the facts underlying his claims against Defendants, particularly given the extraordinary obstacles — incarceration, blindness, pandemic, serial abandonment by counsel, and Defendants'

own sustained concealment — that delayed his ability to investigate and file.

## I. Additional Equitable Tolling Grounds

50. Independent of fraudulent concealment, the following additional grounds support equitable tolling of any applicable limitations period:

a. **The discovery rule:** Plaintiff's claims did not accrue until he discovered, or through reasonable diligence could have discovered, the facts giving rise to those claims. Given the active concealment described above, accrual did not occur until Plaintiff had a reasonable opportunity to connect LCU's compliance with the void Subpoena to the appearance of the records at trial.

b. **Incarceration and disability:** Plaintiff was incarcerated from April 23, 2015 through February 4, 2016, released on bond, sentenced on March 4, 2019, and remained incarcerated through approximately November 2021. During both periods of incarceration, combined with legal blindness during a critical period from approximately 2020 through 2021, Plaintiff faced extraordinary circumstances beyond his control that prevented timely filing and support equitable tolling independent of fraudulent concealment. Plaintiff's bilateral uveitis is not a historical condition — it is chronic, recurrent, and ongoing. As documented in a Froedtert Health ophthalmology record dated October 14, 2025, signed by Dr. Cheryl L. Wang, MD (Exhibit T), Plaintiff presented with visual acuity of 20/200 in the right eye and 20/600 in the left eye, active bilateral anterior chamber inflammation, irregular nonreactive pupils, hazy

vitreous bilaterally, and corneal damage including ground glass opacity and pannus. The treating physician documented that Plaintiff could not recognize people, was not driving, was not regularly leaving the house, and could not read medication bottle labels due to his vision impairment. The same record documents Plaintiff's ongoing significant financial struggles affording copays and medication costs — a treating physician's own notation confirming the financial hardship that further delayed Plaintiff's ability to pursue civil litigation. This ongoing condition, documented by a credentialed treating physician as recently as October 2025, establishes that the disability affecting Plaintiff's ability to litigate has been continuous and is not limited to the incarceration period.

c. **Defendants are estopped from asserting limitations:** A defendant who actively conceals the existence of a cause of action cannot invoke the statute of limitations as a shield. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("if the [defendant] concealed the existence of a cause of action, the limitations period does not begin to run until the plaintiff discovered, or by reasonable diligence should have discovered, the cause"). Defendants' sustained concealment estops them from asserting any limitations defense.

d. **Prior timely filing:** Plaintiff's prior filing of Case No. 18-C-0253, voluntarily dismissed without prejudice, demonstrates that Plaintiff was actively pursuing civil relief within the limitations period and further supports tolling upon refiling.

51. For all of the foregoing reasons, no statute of limitations bars any of Plaintiff's claims, and Defendants are estopped from asserting any limitations defense arising from a period of concealment they themselves created and sustained.

**J. The Parallel § 1983 Proceeding and Its Significance to This Action**

52. Simultaneously with the filing of this Complaint, Plaintiff is filing a separate civil rights action pursuant to 42 U.S.C. § 1983 against Racine County Sheriff's Department investigators and other state actors involved in the underlying criminal investigation and prosecution in Case No. 2015CF000627, including Investigator Brian D. VanScyoc ("the § 1983 Action").

53. The § 1983 Action and this action arise from a common nucleus of operative facts — specifically, the coordinated use of void and fabricated process to obtain Plaintiff's records, the systematic withholding of those records from discovery, and their use at trial. The two actions are complementary and mutually reinforcing in the following respects:

a. **Cross-case discovery compulsion against the state.** In the § 1983 Action, Plaintiff may issue Rule 45 third-party subpoenas directly to Landmark Credit Union compelling production of all communications between LCU, Defendant Frank, and Investigator VanScyoc — including the April 29, 2015 email from VanScyoc to Frank that was specifically listed as outstanding discovery in the January 30, 2018 Order of Judge Flancher and never produced in the criminal proceedings. In this action, Plaintiff

may issue Rule 45 third-party subpoenas to the Racine County Sheriff's Department and District Attorney's Office compelling production of all records related to the LCU subpoena, including internal communications, compliance records, and all versions of VanScyoc's supplementary reports.

b. **Cross-case discovery compulsion against LCU.** In the § 1983 Action, LCU is subject to third-party subpoenas compelling production of records it has never been compelled to produce in any proceeding. In this action, the state actors and their agencies are subject to third-party subpoenas compelling production of records they have never been compelled to produce. Filing both actions simultaneously ensures that neither side can shelter its records behind the limitations of the other proceeding.

c. **Metadata and electronic records.** Federal civil discovery under Rule 34 extends to electronically stored information including metadata. The modifiable .doc format templates found on the Saldana discs — created June 19, 2015 according to their metadata — and the April 29, 2015 email to Frank can be compelled in their native electronic format, preserving metadata that will either confirm or refute the authenticity and timing of the documents. No such compulsion was available in the criminal proceedings.

d. **Deposition of key witnesses.** Federal civil discovery under Rule 30 permits Plaintiff to depose Investigator VanScyoc, Defendant Frank (if living), former DA Patricia Hanson, former ADA Richard Chiapete, and any other person with knowledge of the LCU subpoena — under oath, with a court reporter, and subject to sanctions for false

testimony. These witnesses were never subjected to adversarial examination on the LCU-specific facts in the criminal proceedings.

e. **Spoliation and preservation.** The simultaneous filing of both actions creates an immediate and documented litigation hold obligation on all parties and third parties in possession of relevant records. Any destruction of records after service of either complaint — including the original electronic files from the Saldana discs, VanScyoc's email to Frank, or any LCU internal compliance records — would constitute spoliation subject to sanctions including adverse inference instructions and default judgment. Plaintiff specifically places all parties and third parties on notice of this obligation by the filing of these actions.

f. **Potential post-conviction relief.** Findings in either civil action bearing on the validity of the process by which Plaintiff's records were obtained, or the deliberate withholding of those records from discovery, may support Plaintiff's ongoing efforts to obtain post-conviction relief in Case No. 2015CF000627. Plaintiff expressly preserves all such arguments and does not waive any right to use civil discovery findings in post-conviction proceedings.

54. Plaintiff respectfully requests that the Court take notice of the parallel § 1983 Action and, to the extent practicable, coordinate discovery and case management between the two actions to avoid duplication of effort and ensure that the full scope of the common evidentiary record is developed efficiently and completely.

---

## K. The Defective Special Prosecutor Appointment and the Jurisdictional Void at Trial

55. The Landmark Credit Union bank records obtained through the void Subpoena and withheld from Plaintiff throughout criminal discovery were ultimately introduced at trial in November 2018 as Trial Exhibit 46 by Walworth County District Attorney Haley Jo Johnson, who appeared as Special Prosecutor. However, as the documentary record conclusively demonstrates, Johnson lacked valid legal authority to prosecute Plaintiff's case at any time, including at trial.

56. Wisconsin Statutes § 978.045 governs the appointment of special prosecutors. Under § 978.045(1r)(bm), a judge may appoint a special prosecutor only if the judge or the requesting district attorney submits an affidavit to the Wisconsin Department of Administration ("DOA") attesting that one of a specific set of enumerated statutory conditions exists. The appointment form requires that the "Other statutory reason" box, if checked, be accompanied by a citation to the specific statute authorizing the appointment. No such citation appears on either version of the Appointment of Special Prosecutor form in this case.

57. Two versions of the Appointment of Special Prosecutor form exist for Case No. 2015CF000627, and their comparison reveals a pattern of backdating and fabrication consistent with the broader pattern of document manipulation documented throughout this Complaint:

a. **The Unsigned Version** — received by Plaintiff from the Racine County Felony Courts Case Manager on November 29, 2016, bearing a Racine County Clerk of Circuit Court date stamp of "AUG 19 2016" — contains the following:

i. DA Richard Chiapete's signature requesting the appointment, dated 8/17/16;

ii. Judge Faye M. Flancher's signature and court seal, dated 8-19-16, appointing "Attorney Daniel Necci Or His Designee";

iii. The "Other statutory reason" box is checked, but the reason line and the "Cite statute" line are both **entirely blank** — the form provides no statutory basis whatsoever for the appointment;

iv. The "Oath and Consent to Serve" section — the mandatory sworn acceptance of the appointment by the appointed attorney — is **completely blank**: no attorney signature, no name printed, no bar number, no address, no notary signature, no commission expiration date, and no date of swearing;

v. This version was transmitted by fax from the Walworth County DA's Office on November 29, 2016 at 10:42 AM — the same day Plaintiff requested it from the Racine County Clerk of Courts — and bears the header "WALCO DA's Office / FAX No. 262-741-7200."

b. **The Signed Version** — provided by the Wisconsin Department of Administration to Plaintiff on November 30, 2016 in response to Plaintiff's open records request filed November 29, 2016 — contains the following additions over the Unsigned Version:

Case 2:26-cv-00815-PP     Filed 05/08/26     Page 28 of 47     Document 1

i. Haley Jo Johnson's signature in the "Oath and Consent to Serve" section, with the printed name "Haley J. Johnson," bar number 1067866, and address "1800 County Rd NN, Elkhorn, WI 53121";

ii. A notary attestation indicating the oath was subscribed and sworn before a notary public;

iii. **Critically, the Signed Version omits the Racine County Clerk of Circuit Court date stamp ("AUG 19 2016") that appears on the Unsigned Version** — the two versions of the same form bear different authentication markings, establishing that they are not true copies of the same original document.

58. The timeline established by these two documents is fatal to the legitimacy of the prosecution:

a. Judge Flancher signed the Appointment Order on August 19, 2016.

b. Haley Jo Johnson made her first court appearance as Special Prosecutor on September 16, 2016 — **28 days after** the appointment order, and before she had sworn the mandatory Oath and Consent to Serve.

c. Johnson made a second court appearance by phone on October 21, 2016 — still without having sworn the oath.

d. Johnson did not swear the Oath and Consent to Serve until **November 29, 2016** — 71 days after her first court appearance, and only on the same day Plaintiff went to the Racine County Clerk of Courts requesting the ASP form and independently contacted

the DOA.

e. The DOA's own letter, dated November 30, 2016 and signed by Legal Counsel Elisabeth Winterhack, confirms that the DOA did not receive the sworn appointment form until after Plaintiff's November 29, 2016 public records request — meaning the DOA had not approved the appointment at the time of Johnson's first two court appearances.

59. Under Wisconsin Statutes § 978.045, the Oath and Consent to Serve is not a formality — it is a jurisdictional prerequisite. An attorney who appears as special prosecutor before swearing the mandatory oath has not lawfully accepted the appointment and has no legal authority to act in that capacity. Every court appearance Johnson made before November 29, 2016, every filing she submitted, and every action she took as prosecutor in Case No. 2015CF000627 before that date was taken without legal authority.

60. Furthermore, Daniel Necci — the attorney named in the Appointment Order — had publicly announced his resignation from the Walworth County District Attorney's Office within days of DA Hanson's representation that he had agreed to take the case. Necci never appeared in Case No. 2015CF000627. Johnson appeared in his place without any amended appointment order naming her specifically, and without any statutory authority for the substitution.

61. The appointment form's failure to cite any statutory basis for the appointment — the "Other statutory reason" box is checked but the cite line is blank on both versions — independently voids the appointment. Wisconsin Statutes § 978.045(1r)(bm) requires the affidavit to attest that one of the specifically enumerated conditions exists. A form that checks "Other" without identifying the other is not an affidavit attesting to any condition — it is a blank form that satisfies no statutory requirement.

62. The direct connection to Plaintiff's LCU claims is as follows: The Landmark Credit Union bank records obtained through the void Subpoena, withheld from Plaintiff throughout three and a half years of criminal proceedings in violation of Brady v. Maryland and a direct court order, were ultimately introduced at trial as Trial Exhibit 46 by a prosecutor who had no valid legal authority to prosecute the case. The harm to Plaintiff caused by LCU's initial unlawful disclosure was thus compounded and completed by the introduction of those records at trial by a jurisdictionally unauthorized actor — a trial that was itself conducted without lawful prosecutorial authority.

63. The defective ASP appointment is relevant to this action in the following specific respects:

a. It establishes that the harm caused by LCU's unlawful disclosure was not inadvertently absorbed into a lawful proceeding — it was absorbed into a proceeding that was itself infected with the same pattern of fabricated, backdated, and procedurally defective process that produced the void Subpoena in the first place;

Case 2:26-cv-00815-PP     Filed 05/08/26     Page 31 of 47     Document 1

b. It corroborates Plaintiff's fraudulent concealment allegations: the spontaneous swearing of Johnson's oath on November 29, 2016 — the exact day Plaintiff independently requested the ASP form — is consistent with the pattern of documents being created or completed in reaction to Plaintiff's discovery efforts rather than having been properly executed at the time they purport to bear;

c. It supports Plaintiff's equitable tolling and estoppel arguments: Plaintiff could not have known the full jurisdictional dimension of the harm caused by LCU's records disclosure until he obtained and compared the two versions of the ASP form — a comparison that itself required obtaining records from two separate government sources on two consecutive days;

d. It constitutes independent grounds for declaratory relief, as set forth in Count Four below, establishing that Trial Exhibit 46 was introduced by a prosecutor without valid legal authority, rendering its introduction at trial void.

---

## CAUSES OF ACTION

**COUNT ONE**

*Violation of the Right to Financial Privacy Act*

*12 U.S.C. § 3401 et seq.*

*Against Defendant Landmark Credit Union*

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein, including specifically the fraudulent concealment allegations set forth in Section H above, which bar any statute of limitations defense by Defendants.

65. The Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq. ("RFPA"), was enacted by Congress in direct response to *United States v. Miller*, 425 U.S. 435 (1976), in which the Supreme Court held that bank customers had no Fourth Amendment expectation of privacy in records held by their financial institutions. Congress enacted the RFPA to fill that gap and provide statutory protections for customers' financial records. The RFPA prohibits financial institutions from producing customer financial records to government authorities except pursuant to lawful legal process meeting specific statutory requirements.

66. The RFPA governs disclosures to federal government authorities. The Subpoena at issue here invoked federal authority on its face — the header of the Subpoena reads "Wisconsin Statute Section 968.135/18 USC 2703(d)," expressly citing 18 U.S.C. § 2703(d), a federal statute governing compelled disclosure of electronic communications and financial records to government entities. By invoking 18 U.S.C. § 2703(d) as co-authority on the face of the Subpoena, the process purported to operate under federal statutory authority, bringing LCU's compliance within the scope of the RFPA. Independently, Plaintiff's state law claims under Wisconsin Statutes §§ 968.135, 889.07, and 889.08, and the common law negligence claim in Count Three, provide complete alternative bases for relief if the Court determines the RFPA does not apply to

the state-authority component of the Subpoena.

67. Under 12 U.S.C. § 3407, a financial institution may produce customer records pursuant to a judicial subpoena only if the subpoena is issued pursuant to applicable federal or state law and the subpoena is served on the customer's financial institution.

68. The Subpoena served upon LCU on April 29, 2015 cited Wisconsin Statutes Section 947.01(c) as its authority. That statutory subsection does not exist. A subpoena issued pursuant to a nonexistent statutory authority is not issued "pursuant to applicable law" within the meaning of the RFPA.

69. By producing Plaintiff's confidential financial records in response to a subpoena citing a nonexistent statute — for an offense with which Plaintiff was never charged, with a blank notary commission expiration, and with a facial signature discrepancy — Defendant LCU violated the RFPA's prohibition on unauthorized disclosure of customer financial records.

70. Independently and additionally, under 12 U.S.C. § 3405, before a financial institution produces customer records pursuant to a formal written request or judicial subpoena, the institution must notify the customer of the request or subpoena in a manner reasonably designed to allow the customer an opportunity to challenge the legal process through appropriate judicial proceedings. Defendant LCU never notified Plaintiff that it had received the April 29, 2015 Subpoena or that it intended to comply with it. LCU's failure to provide the required customer notice is an independent

violation of the RFPA separate from and in addition to its production of records pursuant to facially void process.

71. Pursuant to 12 U.S.C. § 3417, Plaintiff is entitled to actual damages, statutory minimum damages of not less than $100 per violation, punitive damages in the event of willful or intentional violation, and reasonable attorneys' fees and litigation costs.

72. LCU's violations were willful and intentional, or at minimum reckless, in that the defects in the Subpoena were apparent on its face and LCU's compliance review, if performed at all, failed to identify and reject facially void process, and LCU made no effort to notify Plaintiff as required by law.

**COUNT TWO**

*Conspiracy Against Civil Rights*

*42 U.S.C. § 1985(2)*

*Against Both Defendants*

73. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein, including specifically the fraudulent concealment allegations set forth in Section H above, which toll all applicable statutes of limitations and estop Defendants from asserting any limitations defense.

74. 42 U.S.C. § 1985(2) prohibits conspiracy between two or more persons to deter, by force, intimidation, or threat, any person from testifying freely in any court of the United States, or to injure any party or witness in his person or property on account of

his having so testified, or to obstruct the due course of justice in any state with intent to deprive any citizen of the equal protection of the laws. The Supreme Court has held that § 1985 reaches private conspiracies and that state action is not required — a private party who conspires with a state actor to deprive a citizen of civil rights is fully subject to liability under the statute. *Griffin v. Breckenridge*, 403 U.S. 88, 104 (1971) ("That § 1985(3) reaches private conspiracies to deprive others of legal rights can, of itself, cause no doubts of its constitutionality."). Defendants LCU and Frank, as private actors who conspired with state investigators before valid legal process was obtained, are therefore subject to liability under § 1985(2) without any independent state action requirement on their part.

75. Defendant Jeff Frank, acting in his capacity as Security Officer of Landmark Credit Union, and Investigator Brian D. VanScyoc of the Racine County Sheriff's Department, acting under color of state law, entered into an agreement to take adverse action against Plaintiff's financial accounts in furtherance of the investigation before valid legal process was confirmed. If Frank is deceased, this claim is asserted against his Estate, which stands in his place for purposes of this action. Regardless of Frank's current status, Landmark Credit Union bears direct institutional liability for this conduct as Frank's employer, and is independently named as a co-conspirator in its institutional capacity.

76. Pursuant to that agreement, Defendant Frank placed a "No Activity" hold on Plaintiff's accounts on or about April 23, 2015, at the direction and coordination of

Investigator VanScyoc, prior to the issuance of the Subpoena on April 29, 2015 and prior to the confirmation of any valid Order of Court.

77. This coordinated pre-process hold on Plaintiff's accounts constituted a conspiracy between a private actor (Defendant Frank/LCU) and a state actor (Investigator VanScyoc) to interfere with Plaintiff's property rights under color of state law, prior to and independent of any lawful legal process.

78. The conspiracy was motivated by the shared goal of the investigation: to seize Plaintiff's financial records and obstruct Plaintiff's ability to defend himself in the ensuing criminal proceedings, by withholding from him the evidence of how his records were obtained.

79. As a direct and proximate result of this conspiracy, Plaintiff suffered the adverse holding of his accounts before valid process was served, the unlawful disclosure of his financial records, and the use of those records at trial as evidence against him — without opportunity to challenge their procurement.

**COUNT THREE**

*Negligence*

*Against Defendant Landmark Credit Union*

*(Wisconsin Common Law, Supplemental Jurisdiction)*

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein, including specifically the fraudulent concealment allegations set

forth in Section H above, which toll all applicable statutes of limitations and estop Defendants from asserting any limitations defense.

81. As a federally insured financial institution and Wisconsin-chartered credit union holding Plaintiff's confidential financial records, Defendant LCU owed Plaintiff a duty of reasonable care to verify that any legal process compelling disclosure of his records was facially valid before complying.

82. The duty to verify legal process is consistent with LCU's own membership agreement, which provides that "The Credit Union may reveal information relating to the Account(s) necessary to comply with subpoenas, summonses, search warrants, requests from governmental agencies or whenever required by law" — the operative phrase being "required by law." A void subpoena citing a nonexistent statute is not process "required by law."

83. The defects in the April 29, 2015 Subpoena were apparent on its face: the citation of Wisconsin Statutes Section 947.01(c), a subsection that does not exist, and the reference to "unlawful use of a telephone," an offense with which Plaintiff was never charged, were discoverable by ordinary compliance review without any legal expertise. A financial institution receiving a subpoena that cites a nonexistent statute has constructive notice that the process is defective.

84. Defendant LCU breached its duty of care by failing to conduct a compliance review adequate to identify facially apparent defects in the Subpoena, or by conducting such a

review and ignoring the defects, and by failing to provide the customer notice required under 12 U.S.C. § 3405 before complying.

85. As a direct and proximate result of LCU's negligence, Plaintiff's confidential financial records were disclosed to the prosecution, withheld from Plaintiff, and introduced at trial against him — causing him substantial harm including the deprivation of a fair trial, conviction, incarceration, and ongoing harm to his reputation, liberty, and financial interests.

### COUNT FOUR

*Declaratory Relief*

*28 U.S.C. §§ 2201-2202*

*Against Both Defendants*

86. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein, including specifically the fraudulent concealment allegations set forth in Section H above, which toll all applicable statutes of limitations and estop Defendants from asserting any limitations defense.

87. An actual controversy exists between Plaintiff and Defendants as to whether LCU's production of Plaintiff's financial records pursuant to the April 29, 2015 Subpoena violated the Right to Financial Privacy Act and Plaintiff's constitutional rights.

88. Plaintiff is entitled to a declaratory judgment that:

a. The April 29, 2015 Subpoena for Documents directed to Landmark Credit Union in Case No. 2015CF000627 was void on its face, citing a nonexistent statutory authority (Wisconsin Statutes Section 947.01(c)) for an uncharged offense, and did not constitute lawful legal process within the meaning of the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq.;

b. The Orders of Court associated with the Subpoena (both Version 1 and Version 2) were defective, unauthenticated, and did not constitute valid legal process authorizing disclosure of Plaintiff's financial records;

c. Defendant LCU's production of Plaintiff's financial records pursuant to the void Subpoena was unauthorized under the Right to Financial Privacy Act;

d. Defendant Frank's coordination of the pre-process "No Activity" hold with Investigator VanScyoc, prior to the issuance of any valid legal process, constituted unlawful adverse action against Plaintiff's financial accounts;

e. The Landmark Credit Union bank records introduced as Trial Exhibit 46 at Plaintiff's November 2018 trial were obtained through void process and withheld from discovery in violation of Brady v. Maryland, 373 U.S. 83 (1963);

f. Walworth County District Attorney Haley Jo Johnson lacked valid legal authority to appear as Special Prosecutor in Case No. 2015CF000627 at the time of trial in November 2018, because: (i) the Appointment of Special Prosecutor form failed to cite

any statutory basis for the appointment as required by Wisconsin Statutes § 978.045(1r)(bm); (ii) Johnson did not swear the mandatory Oath and Consent to Serve until November 29, 2016 — 71 days after her first unauthorized court appearance — and only after Plaintiff's independent inquiry prompted the DOA to receive the sworn form; (iii) the attorney named in the Appointment Order, Daniel Necci, never appeared in the case and resigned shortly after being named, and no valid amended appointment was ever issued naming Johnson; and (iv) two materially different versions of the ASP form exist, with differing authentication markings, consistent with backdating and post-hoc fabrication;

g. The introduction of Trial Exhibit 46 — the Landmark Credit Union bank records — by a prosecutor without valid legal authority to prosecute the case rendered that introduction void and without legal effect, compounding the harm caused by LCU's initial unlawful disclosure and the prosecution's sustained withholding of those records from discovery.

---

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James A. Barker III respectfully requests that this Court:

**A.** Award Plaintiff actual compensatory damages against Defendants, jointly and severally — including against the Estate of Jeff Frank in the event Frank is deceased — in an amount to be determined at trial, for the harm caused by the unlawful disclosure of Plaintiff's financial records, the coordinated pre-process hold on his accounts, the

withholding of those records from discovery, and their use at trial;

**B.** Award Plaintiff statutory minimum damages under 12 U.S.C. § 3417 of not less than $100 per violation against Defendant Landmark Credit Union;

**C.** Award Plaintiff punitive damages against Defendants for willful, intentional, and reckless violations of Plaintiff's federally protected rights;

**D.** Enter a declaratory judgment as set forth in Count Four above;

**E.** Enter injunctive relief requiring Defendant Landmark Credit Union to implement adequate legal process verification procedures before complying with any future subpoena or government request for customer financial records;

**F.** Enter an immediate litigation hold and preservation order directed to Defendants and all third parties in possession of relevant records, specifically including but not limited to:

i. Landmark Credit Union, directing preservation of all records relating to Plaintiff's accounts (Member No. 4664820 and Member No. 900152070), all communications between LCU or Defendant Frank and any law enforcement officer regarding Plaintiff, all internal compliance records relating to the April 29, 2015 Subpoena, all records relating to the "No Activity" hold placed on Plaintiff's accounts, and all personnel records of Defendant Jeff Frank relating to his handling of the Plaintiff matter;

ii. The Racine County Sheriff's Department, directing preservation of all versions of Investigator VanScyoc's supplementary reports in Case No. 2015CF000627 or Complaint No. 15-021102, all electronic communications between VanScyoc and Defendant Frank or LCU, all original electronic files from the discovery discs labeled "Barker Disc 1" and "Barker Disc 2" in their native format with metadata intact, all chain of custody records relating to Plaintiff's LCU bank records, and all records of the April 29, 2015 email from VanScyoc to Frank;

iii. The Racine County District Attorney's Office, directing preservation of all communications relating to the LCU Subpoena and Order of Court, all records relating to the prosecution's receipt of Plaintiff's LCU bank records, all records relating to the decision not to produce those records in discovery, and all records relating to the introduction of those records as Trial Exhibit 46;

iv. Any current or former employee of Landmark Credit Union with personal knowledge of the Plaintiff matter, directing preservation of all personal records, notes, emails, and communications relating to Plaintiff's accounts or the April 29, 2015 Subpoena;

**G.** Order that, upon service of this Complaint, Defendant Landmark Credit Union shall within fourteen (14) days produce to Plaintiff:

i. All records in LCU's possession relating to the April 29, 2015 Subpoena for Documents in Case No. 2015CF000627, including all communications received

from and sent to law enforcement;

ii. All records relating to the "No Activity" hold placed on Plaintiff's accounts, including the date it was placed, who requested it, and the date it was lifted;

iii. The original electronic communication received from Investigator VanScyoc on April 29, 2015 at approximately 0920 hours, in native electronic format with metadata intact;

iv. All internal LCU compliance review records relating to the April 29, 2015 Subpoena;

v. All records relating to Defendant Jeff Frank's current status — including whether he remains employed by LCU, his last known address, and, if deceased, the date of death and the identity of any personal representative of his estate;

**H.** Order coordination of discovery between this action and the simultaneously filed § 1983 Action to the extent practicable, including designation of a single magistrate judge to oversee discovery in both actions and prevent inconsistent rulings on overlapping evidentiary issues;

**I.** Award Plaintiff reasonable litigation costs and, to the extent permitted by applicable law, attorneys' fees pursuant to 12 U.S.C. § 3417 and 42 U.S.C. § 1988;

**J.** Award Plaintiff such other and further relief as this Court deems just and proper, including any relief necessary to ensure the integrity of the evidentiary record in both this action and any related post-conviction proceedings in Case No. 2015CF000627.

---

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

---

### RESPECTFULLY SUBMITTED

Respectfully submitted this ___8___ day of ___5___, 2026.

Signature: _____

**JAMES A. BARKER III**

Plaintiff, Pro Se

1403 West 6th Street, Apt. 214B

Racine, Wisconsin 53404

Phone: (262) 800-2618

Email: jamesbarker3@icloud.com

---

### VERIFICATION

I, James A. Barker III, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Complaint, that the factual allegations therein are true and correct to the best of my personal knowledge, information, and belief formed after reasonable inquiry, and that the legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Executed this __8__ day of __5__, 2026, at Racine, Wisconsin.

Signature: _____

**JAMES A. BARKER III**

Plaintiff, Pro Se

1403 West 6th Street, Apt. 214B

Racine, Wisconsin 53404

Phone: (262) 800-2618

Email: jamesbarker3@icloud.com

---

## EXHIBIT LIST

The following exhibits are attached to or referenced in support of this Complaint:

| Exhibit | Description |
| --- | --- |
| Exhibit A | LCU Subpoena for Documents, dated April 29, 2015 — void on face, citing § 947.01(c) |
| Exhibit B | Affidavit in Support of Subpoena (VanScyoc) — blank notary commission expiration |

| | |
|---|---|
| Exhibit C | Order of Court, Version 1 — blank fields, no court seal, no Clerk stamp |
| Exhibit D | Order of Court, Version 2 — VanScyoc handwritten notations filling blank fields |
| Exhibit E | Nielsen Letter dated January 4, 2016 — confirming Version 2 mailed to Plaintiff |
| Exhibit F | VanScyoc Supplementary Report, Ritter pages 102-107 — Frank "No Activity" hold; LCU account details; discovery annotation |
| Exhibit G | VanScyoc Supplementary Report, DRAFT version (5 pages) — missing page 6 containing LCU details |
| Exhibit H | Plaintiff's handwritten annotation: "No copies of Landmark Bank records has been submitted to the discovery" |
| Exhibit I | Young Audio Recording (Exhibit N from criminal case) — "There's no order in your file in here" |
| Exhibit J | Trial Exhibit 46 — LCU bank records, Document 312, Case No. 2015CF000627 (144 pages), including account statements (November 2013 through March 2015), teller transaction records, account opening documents, and an Illinois Certificate of Title for a 2006 Honda VT750C motorcycle (VIN: JH2RC5OD86K210541) identifying Landmark Credit Union as first lienholder — a third-party vehicle title record mixed into the Plaintiff's bank records production |
| Exhibit K | Flancher Order from January 29, 2018 Hearing — listing LCU bank records as outstanding discovery item |
| Exhibit L | Saldana email, June 22, 2015 — pickup of Barker Disc 1 (eBay Facebook PayPal Landmark) |
| Exhibit M | Plaintiff's Motion to Disqualify, filed January 8, 2018 — identifying all LCU process defects |
| Exhibit N | January 29, 2018 Hearing Transcript — Plaintiff's on-record request for LCU records |
| Exhibit O | LCU Membership Agreement — duty-of-care language regarding subpoena compliance |
| Exhibit P | Racine County Clerk of Courts letter, June 30, 2017 — denial of jurisdiction over records |
| Exhibit Q | Appointment of Special Prosecutor — Unsigned Version (ASP_unsigned) — bearing AUG 19 2016 Racine County Clerk stamp; "Oath and Consent to Serve" section entirely blank; "Other statutory reason" checked but cite line blank; fax header showing transmission from Walworth County DA's Office November 29, 2016 at 10:42 AM |
| Exhibit R | Appointment of Special Prosecutor — Signed Version (ASP_signed) — provided by Wisconsin Department of Administration November 30, 2016; bearing Haley Jo Johnson's signature, bar number 1067866, and Walworth County address; notary attestation; omitting the Racine County Clerk date stamp present on Exhibit Q |
| Exhibit S | Wisconsin Department of Administration letter, November 30, 2016, signed by Legal Counsel Elisabeth Winterhack — confirming DOA received the ASP sworn form only after Plaintiff's November 29, 2016 open records request, establishing that Johnson's first two court appearances (September 16 and October 21, 2016) were made without DOA approval or valid oath |
| Exhibit T | Froedtert Health Ophthalmology Office Visit Record, October 14, 2025, signed by Dr. Cheryl L. Wang, MD — documenting Plaintiff's bilateral chronic anterior uveitis with active inflammation, visual acuity of 20/200 right eye and 20/600 left eye, irregular nonreactive pupils bilaterally, hazy vitreous bilaterally, corneal ground glass opacity and pannus, inability to recognize people or drive, inability to read medication labels, and treating physician notation of Plaintiff's significant financial struggles affording copays and medication costs — establishing that Plaintiff's disabling visual impairment is chronic, ongoing, and continuing through the filing of this Complaint |