UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES ALBERT BARKER, III,

Plaintiff,

Case No. 26-cv-815-pp

v.

LANDMARK CREDIT UNION, JEFF FRANK,
THE ESTATE OF JEFF FRANK, BRIAN VANSCYOC,
DONALD VANDERVEST and RACINE COUNTY,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND STAYING AND ADMINISTRATIVELY CLOSING CASE PENDING CONCLUSION OF PLAINTIFF'S STATE APPEALS**

---

On May 8, 2026, the plaintiff—who is representing himself—filed a forty-seven-page complaint alleging that the defendants complied with an invalid subpoena; he included a wide array of allegations about a Wisconsin state criminal proceeding in which he was a defendant. Dkt. No. 1. With his complaint, the plaintiff filed a motion to proceed without prepaying the filing fee. Dkt. No. 2. On July 10, 2026, the plaintiff amended his complaint, adding Racine County and two Racine County Sheriff's Department investigators as defendants and removing several claims. Dkt. No. 6.

The court will grant the plaintiff's motion to proceed without prepaying the filing fee and will stay and administratively close the case.

## I. Motion for Leave to Proceed Without Prepaying the Filing Fee

To allow the plaintiff to proceed without prepaying the filing fee, the court must decide whether the plaintiff can pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i). The plaintiff's request to proceed without prepaying the fee says that he is employed at Kerry Ingredients and earns $3,400 a month. Dkt. No. 2 at 2. The plaintiff reports that he has two children that he supports for a combined $950 per month. Id. at 1. He states that he has $2,320 in other monthly expenses, including rent, a car payment, credit card debt, groceries, prescriptions and car insurance. Id. at 2–3. The plaintiff reports he has a truck worth $19,000 and $300 in his bank account. Id. at 3. Based on the information in the request, the court concludes that the plaintiff does not have the ability to pre-pay the filing fee. The plaintiff must pay the filing fee over time, as he is able.

## II. Younger Abstention

The plaintiff appealed his state criminal conviction; that appeal is pending. State of Wisconsin v. Barker, Racine County Case No. 2026AP902-CR (available at https://wscca.wicourts.gov). The court must determine whether, under Younger v. Harris, it must abstain from exercising jurisdiction over the plaintiff's claims because they may interfere with the appeal. See Younger v. Harris, 401 U.S. 37, 53–54 (1971).

A. The Plaintiff's Allegations

The plaintiff explains that he held personal savings and checking accounts and business savings and checking accounts with defendant Landmark Credit Union. Dkt. No. 6 at ¶¶7, 8. The plaintiff states that he "was taken into custody on April 23, 2015 and charged under Case No. 2015CF000627 in the Racine County Circuit Court." Id. at ¶11. He contends that as part of law enforcement's search of his girlfriend's residence, Racine County Sheriff's investigator Brian D. VanScyoc located a "Landmark Credit Union identifier belonging to Plaintiff." Id. at ¶12. The plaintiff alleges that Donald Vandervest was the lead investigator for the Racine County Sheriff and oversaw the investigation. Id. at ¶6d. The plaintiff states that VanScyoc contacted defendant Jeff Frank,[1] a Security Officer at Landmark. Id. at ¶13. The plaintiff alleges that according to VanScyoc's report, on or about April 23, 2015, "Defendant Frank was advised that Plaintiff held at least one account with Landmark Credit Union and that Frank 'would place a 'No Activity' hold on [the plaintiff's] account.'" Id. at ¶14. The plaintiff contends that VanScyoc and Frank placed the no-activity hold "before any subpoena had been issued, before any Order of Court had been obtained, and before any valid legal process had been served upon LCU." Id. at ¶15.

The plaintiff alleges that on April 29, 2015, VanScyoc prepared a defective subpoena for "documents which may lead to the identity of the person

[1] The plaintiff offers contingencies in case defendant Frank has passed away or no longer works at Landmark. Dkt. No. 6 at ¶6. The plaintiff contends that regardless of Frank's status, he or his estate will be liable. Id.

responsible for the unlawful use of a telephone, in violation of Wisconsin Statutes Section 947.01(c)." Id. at ¶¶17–18. The plaintiff asserts that he "was never charged with unlawful use of a telephone," "Wisconsin Statutes Section 947.01 is the disorderly conduct statute" and "[i]t has no subsection (c)." Id. at ¶¶19–20. He alleges that the affidavit supporting the subpoena "bears a blank notary commission expiration date," rendering it "unsworn and defective under Wisconsin Statutes Section 137.01(4)[.]" Id. at ¶22 (citing Wis. Stat. §§889.07, 889.08). The plaintiff contends that "[t]he Wisconsin Supreme Court and Court of Appeals have held that the oath or affirmation supporting legal process is a matter of substance, not a technicality, and cannot be cured by a sworn statement after execution" and "an unsworn initiating instrument is a fundamental, jurisdiction-depriving defect and that what happens afterward cannot make up for a faulty start." Id. (citing State v. Tye, 248 Wis. 2d 530 (Wis. 2001); Park 6 LLC v. City of Racine, 344 Wis. 2d 661 (Wis. Ct. App. 2012)).

The plaintiff alleges other defects of the subpoena. Id. at ¶¶23–25. He asserts that the "face" of the subpoena shows "W. Richard Chiapete" as the "requesting Assistant District Attorney" despite "the signed version" of the subpoena and supporting documents bearing the signature of Patricia Hanson. Id. He claims that the affidavit states the subpoena is for evidence of felony theft, but that the face of the subpoena states that the investigation is for "unlawful use of a telephone." Id. at ¶24. The plaintiff alleges that metadata from documents turned over in discovery during his criminal prosecution show

that VanScyoc created the documents from a template and illustrate concealment and fabrication of evidence. Id. at ¶¶26–27. From this allegation, the plaintiff asserts that "the LCU subpoena and Order were generated from templates rather than authentic original court process." Id. at ¶27. The plaintiff goes on to allege that other versions of reports that the state used to investigate and prosecute him also were invalid. Id. at ¶¶28–30.

The plaintiff contends that "[t]wo versions of an Order of Court under Wis. Stat. § 968.135 were produced in connection with the Subpoena" and that both were defective and missing key elements. Id. at ¶¶30–30a. He asserts that "[n]either Order was the product of genuine, independent judicial authorization" and that "the face of the process was prepared by the investigator[.]" Id. at ¶30a.

The plaintiff alleges that despite the subpoena being void, Landmark complied with it, and on May 7, 2015, "Frank advised VanScyoc that Plaintiff held four accounts with LCU[.]" Id. at ¶¶31–33. The plaintiff asserts that Landmark produced the plaintiff's full account history. Id. at ¶32. He contends that Landmark "had a duty under the Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq., and under Wisconsin Law, to verify that any legal process compelling disclosure of customer financial records was legally valid before producing those records." Id. at ¶33.

The plaintiff asserts that the bank records "were never produced to Plaintiff or his defense counsel at any stage of discovery." Id. at ¶. Despite the

lack of production, the plaintiff states that Landmark bank records were introduced at his trial as Trial Exhibit 46. Id. at ¶35.

The plaintiff argues that "[a]ll applicable statutes of limitations governing Plaintiff's claims are tolled by Defendants' fraudulent concealment." Id. at ¶36. The plaintiff describes several ways the defendants allegedly worked with the state to conceal the facts related to his claim. Id. at ¶¶36–38. He argues that the state kept the void subpoena out of his criminal case. Id. at 37.

The plaintiff asserts that he could not have discovered the information supporting his claim despite his due diligence. Id. at ¶38. He explains that he was incarcerated from March 4, 2019 to November 2021. Id. at ¶38a. He states that while incarcerated, his ability to investigate the claim was curtailed, especially from 2020 to 2021 when the plaintiff was legally blind and COVID-19 limited access to the prison law library. Id. The plaintiff argues that "[u]nder the discovery rules, the doctrine of fraudulent concealment, and the doctrine of equitable tolling and equitable estoppel, no applicable limitations period bars any claim[.]" Id.

The plaintiff asserts six claims. Claim one is a Right to Financial Privacy Act, 12 U.S.C. §3401 *et seq.*, claim against Landmark. Id. at 19–20. The plaintiff argues §3407 provides that a financial institution may produce records only upon a subpoena, and that the subpoena at issue was void. Id. The plaintiff alleges that "because the process was generated and completed by the investigating officer rather than issued through, independent judicial authorization (¶30a), no reasonable institution could have relied on it." Id. at

¶43. He contends that "[p]ursuant to 12 U.S.C. § 3417, Plaintiff is entitled to actual damages, statutory minimum damages of not less than $100 per violation, punitive damages in the event of willful or intentional violation, and reasonable attorneys' fees and litigation costs." Id. at ¶44.

Claim two is a 42 U.S.C. §1983 claim against all the defendants. Id. at 20–23. The plaintiff claims that VanScyoc acted under color of state law when he coordinated the no-activity hold on the plaintiff's account and the disclosure of his financial records through a void subpoena. Id. at ¶47. The plaintiff asserts that Frank acted under color of state law because he was a "willful participant in joint action with" VanScyoc. Id. He asserts that "Vandervest, as the lead investigator directing the investigation that generated and used the void process, acted under color of state law and, upon information and belief, directed and participated in the seizure and disclosure of Plaintiff's records." Id. The plaintiff asserts that the defendants violated his Fourth Amendment rights through the seizure of his account "without valid legal process and without probable cause particular to Plaintiff." Id. at ¶48.

The plaintiff asserts that Racine County is liable under Monell[2] because the constitutional violation resulted from a policy or custom. Id. at ¶48a. The plaintiff argues that

> [t]hat custom is evidenced by, among other things: twenty-two search warrants, twenty-two supporting affidavits, and twenty-two warrant returns produced in editable Microsoft Word format on Racine County computers, authored and revised by County investigators rather than issued as authenticated court originals (¶27); the routine insertion by investigators of "electronically

[2] Monell v. Dept. of Social Services of City of New York, 436 U.S. 658 (1978).

> approved by District Attorney" notations that the District Attorney did not enter, as Investigator Vanscyoc admitted under oath (¶23); the maintenance of foundational investigative reports in multiple, altered, undisclosed versions (¶27a); and the absence, across this investigation, of clerk-certified original process (¶30). Upon information and belief, this reflects a Racine County custom of generating and using investigator-authored, unauthenticated instruments in place of duly issued and certified legal process.

Id. at ¶48b.

Claim three, as an alternative to claim two, is a 42 U.S.C §1985(2) conspiracy against civil rights claim against all of the defendants. Id. at 23. The plaintiff alleges that the defendants conspired to impair his ability to prosecute his federal cases. Id. at ¶52. In the alternative, he argues that "the conspiracy was motivated by racial, or otherwise class-based, invidiously discriminatory animus." Id. at ¶53.

Claim four is a Wisconsin law negligence claim against Landmark. Id. at 25–26. The plaintiff asserts that Landmark was negligent by turning over his financial records based on a void subpoena. Id. at ¶¶56–58.

Claim five is a Wisconsin law "Intentional Misrepresentation and Fraudulent Concealment" claim against VanScyoc, Frank and Landmark. Id. at 26–28. The plaintiff contends that although this claim has a three-year statute of limitation, it did not accrue until the plaintiff discovered the fraud. Id. The plaintiff asserts that VanScyoc "generated" invalid "process" which constituted false representations. Id. at ¶58b. He says that Landmark worked with VanScyoc to conceal the hold on the plaintiff's account. Id.

Claim six is a claim for declaratory relief under 28 U.S.C. §§2201–2202 against all of the defendants. Id. at 28–29. The plaintiff asserts that he "is entitled to a declaratory judgment that:"

> a. The April 29, 2015 Subpoena directed to LCU was void on its face, citing a nonexistent statutory authority (Wis. Stat. § 947.01(c)) for an uncharged offense, and did not constitute lawful legal process within the meaning of the Right to Financial Privacy Act or Wisconsin law;
> b. The Orders of Court associated with the Subpoena (both Version 1 and Version 2) were defective, unauthenticated, and did not constitute valid legal process authorizing disclosure of Plaintiffs financial records;
> c. LCU's production of Plaintiff's financial records pursuant to the void Subpoena was unauthorized and unlawful; and
> d. Defendant Frank's coordination of the pre-process "No Activity" hold with Investigator Vanscyoc, before any valid legal process issued, was an unlawful restraint on Plaintiff's property undertaken under color of state law.

Id. at ¶¶60a–d.

In addition to declaratory relief, the plaintiff requests compensatory damages against the defendants, statutory damages under 12 U.S.C. §3417, punitive damages and costs and fees. Id. at 29–30.

B. Analysis

The plaintiff has appealed the restitution order from his Circuit Court case to the Wisconsin Court of Appeals. Barker, Case No. 2026AP902-CR. In that appeal, the plaintiff makes several of the same arguments that various documents, including warrants and subpoenas, were invalid because they did not contain an oath, affirmation or proper seal. Id., Brief of Appellant at 18–20. The plaintiff also repeats his arguments based on Wis. Stat. §968.22, Tye and

Park 6 LLC. Id. at 19–20. The plaintiff makes allegations about VanScyoc typing in attestations by the district attorney. Id. at 17–18.

Younger "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021) (citing Younger, 401 U.S. at 43–44; see Gakuba v. O'Brien, 711 F.3d 751, 754 (7th Cir. 2013) ("*Younger* holds that federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings."). A federal court can avoid this directive only if there are circumstances that create "an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." Kugler v. Helfant, 421 U.S. 117, 125 (1975).

Although the plaintiff's state court appeal does not directly concern the subpoenas at issue here, all the plaintiff's claims in the instant complaint necessarily would require the court to decide whether certain subpoenas, warrants and subpoena practices related to the plaintiff's appeal were unconstitutional. For example, the plaintiff's claims about VanScyoc's alleged use of templates and Racine County's "custom" of unconstitutional subpoenas and warrants would require the court to interfere with the plaintiff's appeal, and the court must abstain from exercising jurisdiction over those claims.

This is not the first time a federal court has told the plaintiff it cannot interfere with his state court proceeding. The plaintiff attempted to bring a §1983 claim over how Racine County dealt with warrants in Barker v.

VanScyoe, Case No. 2:18-cv-253-JPS, (E.D. Wis.). In 2018, Judge Stadtmueller stayed some of the plaintiff's claims on Younger grounds, explaining that "the Court will abstain until the conclusion of the trial and any attendant post-trial proceedings, *including any appeal or collateral review*." Id. Dkt. No. 43 at 28–29 (emphasis added). This court will follow suit and abstain until the conclusion of any post-trial proceedings, *including the plaintiff's appeal*. The court will stay the plaintiff's case until his appeal is complete and his state court proceedings are closed. See Simpson v. Rowan, 73 F.3d 134, 138–39 (7th Cir. 1995).

## III. "Notice of Documented Retaliation Concerns and Request for Judicial Notice Pursuant to Federal Rule of Evidence 201"

On June 4, 2026, the plaintiff submitted a "Notice of Documented Retaliation Concerns and Request for Judicial Notice Pursuant to Federal Rule of Evidence 201." Dkt. No. 4. In this notice, the plaintiff alleges that someone attempted to murder his son, and that Racine County has refused to properly investigate the shooting or bring criminal charges against the alleged perpetrator. Id. at 3–5. The plaintiff alleges that Racine County also refused to properly investigate an instance when the plaintiff was a victim of a shooting. Id. at 5–7. The plaintiff states that Racine County law enforcement raided his father's house and wiped home-surveillance footage from the raid. Id. at 8.

The plaintiff also claims the Racine County Circuit Court was prejudiced against him. Id. at 9. He accuses Judge Ptacek of issuing an illegal gag order on certain evidence and only allowing him to view certain evidence under unreasonable conditions. Id. at 9–10. He claims the court sentenced him despite the fact he was legally blind at the time and that the court has refused

to return the cash bond the plaintiff posted for two of the counts on which the jury acquitted him. Id. at 10–11.

The plaintiff accuses Racine County officials of more misconduct connected to his various state and federal cases. Id. at 12. He claims that on the same day he filed a post-conviction motion in his state court case, Racine County decided to collect civil restitution. Id. The plaintiff also alleges that a Walworth County ADA denied the plaintiff's open records request. Id. at 13. The plaintiff states that he is providing the same notice to the Wisconsin Department of Justice and the Federal Bureau of Investigation. Id. at 17. The plaintiff asserts that he is not seeking a TRO or making other claims. Id. at 17–18. The plaintiff asks for the following relief: "[t]ake judicial notice, pursuant to Federal Rule of Evidence 201, of the matters stated in this Notice;" "[p]reserve this Notice in the record of the present action;" "[c]onsider the matters stated in this Notice in connection with the Court's screening of Plaintiff's Complaint under 28 U.S.C. § 1915 and any subsequent proceedings; and" "[g]rant such other and further relief as the Court deems just and proper." Id. at 18–19.

This document is not a motion that requires court action, but the court nonetheless will deny the plaintiff's request and will not take judicial notice of the facts he alleges. Federal Rule of Evidence 201 provides that

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known with the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

The plaintiff's allegations are not "generally known" and they cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." They are the plaintiff's uncorroborated version of certain events.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** that the case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the conclusion of the plaintiff's state court proceedings. The court will reopen this case only after the plaintiff notifies the court that his state court appeals have concluded and files a motion to reopen the case.

Dated in Milwaukee, Wisconsin this 20th day of August, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**